| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 9:18-CR-43 |
| | § | |
| WINFRED EARL WARE, JR. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Winfred Earl Ware, Jr.'s ("Ware") Motion to Suppress the Testimony of Derek Harrison ("Harrison") (#90), wherein he contends that his Sixth Amendment right to counsel was violated when Harrison, while allegedly acting as a government agent, purportedly elicited incriminating information from him. Having considered the pending motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On November 14, 2018, a Grand Jury for the Eastern District of Texas returned a three-count Indictment charging Ware with: (1) conspiracy to possess with intent to distribute a controlled substance (methamphetamine), in violation of 21 U.S.C. § 846; (2) obstruction of the due administration of justice, in violation of 18 U.S.C. § 1503; and (3) tampering with a witness by misleading conduct, in violation of 18 U.S.C. § 1512(b)(1). The final pre-trial conference and voir dire were conducted on June 17, 2019. Testimony began on June 19, 2019. The Government learned that Harrison was a potential witness on June 18, 2019.

II.  Factual Findings

Ware, who was previously detained at the LaSalle Corrections Facility in Beaumont, Texas, was transferred to the Upshur County Jail on June 13, 2019, to be closer to Tyler, Texas,

where his trial was scheduled to begin on June 17, 2019. Ware was placed in a six-person cell with five other prisoners, which was one of two cells reserved for federal inmates at the facility. Harrison had been housed in the cell since January 2019 and was awaiting sentencing for his participation in a crack cocaine conspiracy case pending before Judge Schroeder in Texarkana, Texas. The decision to place Ware in the cell was made by Sgt. Somer Monts ("Sgt. Monts") with the Upshur County Sheriff's Office Jail Division. Sgt. Monts placed Ware in the same cell as Harrison because both were federal detainees and had 4-Medium security classifications. Sgt. Monts followed the "classification decision tree" pursuant to jail policy to classify and house both inmates. Harrison was a defendant and cooperating witness in case number 6:18-cr-37, *United States of America v. Jason Lee Allison, et al*. Harrison cooperated with the Government in his case from November 13, 2017, until he was indicted and surrendered to the custody of authorities on July 30, 2018.

On June 18, 2019, Harrison was sentenced for his role in case number 6:18-cr-37. At his sentencing hearing, Harrison's attorney informed Assistant United States Attorney ("AUSA") Ryan Locker, who was assigned to his case, that Harrison had information regarding Ware that might be of interest to the Government. Locker spoke briefly with Harrison and his attorney, learned that Harrison would be willing to speak with the AUSAs assigned to Ware's case, and instructed Harrison not to have any further conversations with Ware. Locker advised the AUSAs assigned to Ware's case of Harrison's willingness to speak with them regarding the instant case. After the sentencing hearing, Harrison was returned to the Upshur County Jail where he was interviewed by Special Agent Jonathan Dickard, AUSA Michelle Englade, and Special Agent

Craig Redden ("S.A. Redden")[1] in the presence of his attorney, Jason Cassel. After the interview, Harrison was placed in solitary confinement and had no further contact with Ware.

On June 19, 2019, the court held an evidentiary hearing outside the presence of the jury regarding Harrison's proffered testimony. It is undisputed that Harrison operated as a confidential informant under the direction of S.A. Redden from November 2017 until July 30, 2018, in regard to case number 6:18-cr-37. S.A. Redden confirmed under oath that he ceased contact with Harrison on July 30, 2018, the date he surrendered. Further, S.A. Redden had no knowledge that Harrison and Ware were housed together and did not expressly or implicitly instruct Harrison to inquire into Ware's case or trial strategy. The record reflects that until he spoke with the Government on June 18, 2019, Harrison had no contact with any representative of the Government for the past year. Harrison testified that, when Ware first entered the cell, he asked Ware what he was doing there. Harrison and Ware are both from the small town of Carthage, Texas. Thereafter, according to Harrison's testimony, Ware spoke with Harrison and his other cellmates about various aspects of the instant case and showed him a variety of case-related documents. Harrison testified that aside from asking an occasional question, pointing out apparent inconsistencies in Ware's theory of his case, and feigning ignorance of S.A. Redden, Harrison merely listened to Ware's comments.

III. Analysis

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "This right is not limited to the trial itself; an accused is entitled to assistance of counsel at all

---

[1] S.A. Redden is a case agent in both Harrison's and Ware's cases.

'critical stages' of criminal proceedings." *United States v. Pleitez*, 876 F.3d 150, 157 (5th Cir. 2017) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). In *Spano v. New York*, the Supreme Court of the United States extended this protection to include a defendant's right to counsel during post-indictment interrogations by Government agents. 360 U.S. 315 (1959). In *Massiah v. United States*, the Supreme Court expounded on this protection by including cooperating government informants in the category of "government agents." 377 U.S. 201, 206 (1964). After *Massiah*, the Supreme Court decided *United States v. Henry*, 447 U.S. 264 (1980). In *Henry*, a jailhouse informant, at the government's instruction, developed a relationship of trust and confidence with the defendant such that the defendant eventually revealed incriminating information. *Id.* at 269. The government argued that *Massiah* did not apply because the government instructed the informant not to question the defendant about his crime. *Id.* at 271. The Court rejected this argument, concluding that "[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel." *Id.* at 274. The Court reached a similar conclusion in *Maine v. Moulton*, where an informant agreed to record telephone conversations and a meeting with a co-defendant to plan defense strategy before an upcoming trial with equipment supplied by the police. 474 U.S. 159, 177 (1985).

In *Kuhlmann v. Wilson*, the Court provided additional guidance as to the application of *Massiah*. 477 U.S. 438 (1986). In *Kuhlmann*, state detectives reached an agreement with the defendant's cell mate to be an informant. *Id.* at 439. The detectives instructed the informant to ask no questions about the crime but merely to listen to what the defendant said to others. *Id.* at 440. The trial court determined that the informant obeyed the instructions and only listened and

made notes regarding what the defendant said. *Id.* The *Kuhlman* Court held that no *Massiah* violation had occurred, emphasizing that to establish a violation the defendant must demonstrate that the "police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.* at 459. Since *Kuhlman*, the Court has not revisited the issue. Lower courts, however, have repeatedly addressed *Massiah* and its progeny.

The lower courts' application of the *Massiah* line of cases frequently depend on two issues: (1) whether the informant was acting as an agent of the Government and (2) whether the informant deliberately elicited the information from the defendant. *See Iowa v. Marshall*, 882 N.W.2d 68, 91-99 (Iowa 2016), *cert. denied*, 137 S.Ct. 829 (2017). Both issues are relevant here.

A. <u>Informant Acting as Government Agent</u>

"The Supreme Court has not formally defined the term 'government agent' for Sixth Amendment purposes." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 893 (3d Cir. 1999) (citing *Depree v. Thomas*, 946 F.2d 784, 793-94 (11th Cir.), *cert. denied*, 528 U.S. 824 (1999)). A split of authority has developed among the Courts of Appeal as to the definition. *See Ayers v. Hudson*, 623 F.3d 301, 310 (6th Cir. 2010) (observing the split). The First, Second, Eighth, Ninth, and D.C. Circuits have adopted a narrow, bright line rule that "[a]n informant becomes a government agent . . . only when the informant has been instructed by the police to get information about the particular defendant." *United States v. Birbal*, 113 F.3d 342, 346 (2d Cir.), *cert. denied*, 522 U.S. 976 (1997); *see United States v. LaBare*, 191 F.3d 60, 65 (1st Cir. 1999); *Moore v. United States*, 178 F.3d 994, 999 (8th Cir.), *cert. denied*, 528 U.S. 943 (1999); *United States v. Watson*, 894 F.2d 1345, 1347-48 (D.C. Cir. 1990); *Brooks v. Kincheloe*, 848 F.2d 940, 945 (9th Cir. 1988). On the other hand, the Third, Fourth, Sixth, and Eleventh Circuits have

adopted a broader, more fact specific inquiry. *See Ayers*, 623 F.3d at 310; *Matteo*, 171 F.3d at 893; *United States v. Brink*, 39 F.3d 419, 423 (3d Cir. 1994); *Depree*, 946 F.2d at 793-94; *Thomas v. Cox*, 708 F.2d 132, 136 (4th Cir.), *cert. denied*, 464 U.S. 918 (1983). Under the broader approach, "[t]here is, by necessity, no bright-line rule for determining whether an individual is a government agent for purposes of the sixth amendment right to counsel. The answer depends on the 'facts and circumstances' of each case." *Ayers*, 623 F.3d at 310 (quoting *Depree*, 946 F.2d at 793-94). At a minimum, however, these courts require "some evidence that an agreement, express or implied, between the individual and a government official existed at the time the elicitation [took] place." *Ayers*, 623 F.3d at 310 (citing *Matteo*, 171 F.3d at 893; *Brink*, 39 F.3d at 423).

The United States Court of Appeals for the Fifth Circuit, however, has charted its own course on this issue, adopting a two-part test, "requiring the defendant to show that the informant: (1) was promised, reasonably led to believe, or actually received a benefit in exchange for soliciting information from the defendant; and (2) acted pursuant to instructions from the State, or otherwise submitted to the State's control." *Creel v. Johnson*, 162 F.3d 385, 393 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *see Thompson v. Davis*, 916 F.3d 444, 454 (5th Cir. 2019). Here, it is apparent that Ware is unable to satisfy his burden under the Fifth Circuit's standard. It is important to note, however, that the Fifth Circuit has not explicitly addressed whether the same standard applies on direct appeal but, rather, has considered the proper standard only in the context of a *habeas corpus* proceeding. Nevertheless, it appears that the court has adopted the same or a similar standard in the context of a direct appeal. *See United States v. Bates*, 850 F.3d 807, 810 (5th Cir. 2017) (assuming the rule set forth in *Creel v. Johnson* applies

in the context of a direct appeal); *United States v. Johnson*, 954 F.2d 1015, 1019 (5th Cir. 1992) ("Bullard was acting as a government agent when he met with Johnson. The government understandably does not contend otherwise. He had entered into a *quid pro quo* agreement with the government before his meetings with Johnson."). In any event, under any of the above standards, it is clear from the record that Harrison was not acting as a government agent when interacting with Ware.

While Harrison may have had an agreement to act as a government informant at one point in time in connection with the case in which he was charged, the agreement had no bearing on Ware or his case and it came to an end months before, on July 30, 2018. In this instance, the Government did not provide Harrison any instructions, either express or implied, to gather information about Ware. In fact, Harrison and Ware's being placed in the same jail and in the same cell was purely happenstance, resulting from Ware's case being tried in Tyler, the need to keep identified witnesses separated, and their common security classification. It was this fortuitous circumstance coupled with Harrison's hope for a sentence reduction, not the Government's instruction or agreement, that led Harrison to advise his lawyer and the Government that Ware had shared pertinent information about his case. "[T]he Sixth Amendment 'does not protect a defendant against private individuals who wish to profit at his expense.'" *Marshall*, 882 N.W.2d at 93 (quoting *Jackson v. Delaware*, 684 A.2d 745, 752 (Del. 1996), *cert. denied*, 520 U.S. 1171 (1997)).

Ware would have this court adopt a rule that if, at any time, an informant had entered into a cooperation agreement with the Government, he continued to be a government agent in perpetuity. The Fifth Circuit has repeatedly rejected such a contention. *See United States v.*

7

*Fields*, 761 F.3d 443, 478 (5th Cir. 2014), *as revised*, (Sept. 2, 2014), *cert. denied*, 135 S. Ct. 2803 (2015) (holding that a jailhouse informant was not a government agent when "[h]e had previously cooperated with the government and saw an opportunity to do so again"); *United States v. Cutno*, 431 F. App'x 275, 2011 WL 2533814 at *3 (5th Cir. 2011) (finding no *Massiah* violation when the informant was cooperating under a plea agreement in a different case and in the absence of evidence indicating the informant "was acting at the Government's behest at the time that [the defendant] made his confession"); *see also United States v. Moore*, 178 F.3d 994, 999 (8th Cir.) (finding no *Massiah* violation when "[t]o the extent there was an agreement between [the informant] and the government, there [was] no evidence to suggest it had anything to do with [the defendant]"), *cert. denied*, 528 U.S. 943 (1999). While Harrison may have been a government agent in regard to dealings with other defendants in another case prior to his detention, he was not acting in the scope of that agency relationship when Ware shared the details about his case and litigation strategy with Harrison. It is apparent that, at all relevant times, Harrison was acting as an "entrepreneur" and not as a government agent. The mere fact that Harrison knew from prior experience that he might benefit from providing assistance to the Government is insufficient to make him a government agent.

B. <u>Deliberate Elicitation of Information</u>

In addition to showing that the informant is a government agent, a *Massiah* violation requires evidence that "the police and their informant took some action" as opposed to merely being a "passive listener." *Kuhlmann*, 477 U.S. 459 ("[T]he Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." (quoting *Moulton*, 474 U.S. at 175)). "In the typical case,

8

the central controversy is over whether certain statements were deliberately elicited or whether they were spontaneously volunteered, [this is] always a fact-intensive inquiry." *United States v. Lozada-Rivera*, 177 F.3d 98, 106 (1st Cir. 1999). On one end of the spectrum, "the government is not involved in interrogation where a government agent merely acts as a listening post." *Manning v. Bowersox*, 310 F.3d 571, 575 (8th Cir. 2002), *cert. denied*, 538 U.S. 1035 (2003). On the other hand, an informant deliberately elicits a statement when he initiates the conversation of the defendant's case which eventually leads to an incriminating statement. *Johnson*, 954 F.2d at 1020 ("[Informant] not only did more than listen, but also initiated the discussion of the case which led to [defendant's] incriminating statements."). "[T]he boundary between listening-post cases and cases involving deliberate elicitation is fraught with border disputes." *Marshall*, 882 N.W.2d at 96.

"When an agent does more than just listen, but also initiates discussion of the case which leads to incriminating statements, a sixth amendment violation occurs." *Blackmon v. Johnson*, 145 F.3d 205, 210 (5th Cir. 1998), *cert. denied*, 526 U.S. 1021 (1999). The agent, however, is not required to remain absolutely silent to avoid "deliberately eliciting" a statement. *See Kuhlmann*, 477 U.S. at 460 (holding that informant's remark that the defendant's version of the crime "didn't sound too good" was not a deliberate eliciting); *McDonald v. Blackburn*, 806 F.2d 613, 622 (5th Cir. 1986) (holding informant asking, "What ring?" was not a deliberate eliciting), *cert. denied*, 481 U.S. 1070 (1987). The defendant has the burden of proof on this issue. *See Cutno*, 2011 WL 2533814 at *3.

At the June 19, 2019, hearing, Harrison gave unrefuted testimony that he made only occasional remarks in response to Ware's comments and disclosures such as: What are you doing

9

here?; pointing out apparent inconsistencies between Ware's statements and documents Ware had shown him; and discussing where court staff might be staying in Tyler. These remarks were not intended or even likely to elicit incriminating evidence. In essence, Harrison's testimony confirms that he was little more than a listening post for Ware's unsolicited commentary about his case.

In the instant motion, Ware requests an additional evidentiary hearing. Pursuant to Rule 104: "The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." FED. R. EVID. 104(a). "Whether a hearing must be granted is a matter within the sound discretion of the district court." *United States v. Smith*, 546 F.2d 1275, 1279 (5th Cir. 1977) (citing *United States v. Poe*, 462 F.2d 195, 197 (5th Cir. 1972), *cert. denied*, 414 U.S. 845 (1973)). Nonetheless, a defendant is not entitled to a hearing unless he can demonstrate a serious factual dispute which, if true, would entitle him to exclusion of the challenged evidence. *United States v. Dowell*, 430 F.3d 1100, 1107 (10th Cir. 2005) ("Unless a serious factual dispute can be shown to exist, and one which, if successful, the defense would be entitled to exclusion, no hearing is at all necessary." (quoting *LaFrance v. Bohlinger*, 499 F.2d 29, 36 (1st Cir. 1974))), *cert. denied*, 549 U.S. 828 (2006).

Here, Ware does not identify any witnesses he would call to testify at another evidentiary hearing, nor does he outline what evidence might be uncovered. Moreover, although he was given an opportunity to brief the matter, Ware provided no authority, affidavits, or other evidence suggesting that Harrison was acting as a government agent or that he actively elicited information from Ware about his case. Accordingly, Ware has failed to satisfy his burden of establishing that a *Massiah* violation has occurred and has made no showing that he would be able to do so if the

court held a second evidentiary hearing. *See Bates*, 850 F.3d at 810 ("[T]he defendant bears the burden of showing that [a *Massiah* violation occured].").

IV. Conclusion

Consistent with the foregoing analysis, the record reflects that Harrison was not acting as a government agent and did not deliberately elicit incriminating statements from Ware. Accordingly, Ware's Motion to Suppress is DENIED.

SIGNED at Tyler, Texas, this 25th day of June, 2019.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE