| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 9:18-CR-43 |
| § | |
| WINFRED EARL WARE, JR. § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Winfred Earl Ware, Jr.'s ("Ware") *pro se* Emergency Motion for Compassionate Release (#200), wherein Ware requests that the court reduce his term of imprisonment and release him to home confinement for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A). The Government filed a response in opposition (#205). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.  Background

Ware was originally indicted in a drug trafficking conspiracy with ten codefendants in Case No. 9:17-CR-41. On August 1, 2018, after Ware submitted fraudulent exhibits to the court purporting to exculpate him, the court granted the Government's motion to dismiss the charges against him without prejudice. On November 14, 2018, a federal grand jury in the Eastern District of Texas returned a three-count Indictment charging Ware in Count One with Conspiracy to Possess with Intent to Distribute Methamphetamine (actual), in violation of 21 U.S.C. § 846; in Count Two with Obstruction of the Due Administration of Justice, in violation of 18 U.S.C. § 1503; and in Count Three with Tampering with a Witness by Misleading Conduct, in violation

of 18 U.S.C. § 1512.  Following an eight-day jury trial, Ware was convicted on all three counts. On November 26, 2019, the court sentenced Ware to 180 months' imprisonment, followed by a five-year term of supervised release on Count One; 120 months' imprisonment, followed by a three-year term of supervised release on Count Two; and 180 months' imprisonment, followed by a five-year term of supervised release on Count Three, all to run concurrently.  Ware filed a notice of appeal of his conviction and sentence, which is pending before the United States Court of Appeals for the Fifth Circuit, Case No. 19-40989.  Ware is currently housed at one of the low security federal correctional institutions in Oakdale, Louisiana ("FCI Oakdale I"), and his projected release date is September 6, 2031.

II.   Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on [his/her] behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-

release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Attached to Ware's motion is Ware's request for home confinement, initiated April 3, 2020, which was ultimately denied by the regional director on June 29, 2020, in an order explaining that although Ware has a low Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") score, he has yet to serve 25 percent of his term of imprisonment and has significantly more than 18 months left to serve. As a result, Ware is not a candidate for priority home confinement placement under the CARES Act. Ware also attached a copy of an administrative remedy appeal form, dated July 20, 2020, in which he mentions compassionate release for the first time; however, the form is not addressed to the warden, nor does it indicate if or when it was received by the warden. The instant motion is postmarked August 10, 2020.

Although Ware pursued his administrative remedies with respect to his request for home confinement, he has not shown that he has exhausted his administrative remedies with respect to his request for compassionate release or that he waited for the lapse of 30 days after the warden of FCI Oakdale I received his request before seeking compassionate release from the court. *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must

enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Moreover, even if Ware had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify the remainder of his term of imprisonment to a term of supervised release with a condition of home confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the

following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

Ware concedes that his case does not fall into the expressly defined USSG categories of circumstances that may give rise to extraordinary and compelling reasons due to medical condition, age, or family circumstances. Indeed, Ware, age 31, explicitly acknowledges his "youth and lack of health issues" in his motion. He advised Probation when preparing his Presentence Investigation Report ("PSR") in August 2019 that he "has no history of health-related issues" and "does not take any prescription medication." Accordingly, Ware is classified as a Care Level I inmate by the BOP, denoting that he is healthy or requires only simple chronic care.

Instead, Ware asserts that the COVID-19 pandemic and the BOP's inadequate responses constitute extraordinary and compelling circumstances to warrant compassionate release. Ware's

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

6

request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Ware for any reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Ware's situation. As of September 14, 2020, the figures available at www.bop.gov list 1 inmate (out of a total population of 883) and 12 staff members at FCI Oakdale I as currently positive for COVID-19. The figures also indicate that 211 inmates and 21 staff members have recovered, while 7 inmates at the facility have succumbed to the disease.

Although Ware expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Ware, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").

Despite Ware's assertions that he was convicted of nonviolent offenses and has no prior convictions, the court finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). The nature and circumstances of Ware's offenses of conviction entail his participation in a methamphetamine trafficking conspiracy, his obstruction of justice, and his

tampering with a witness by misleading conduct. Within the drug trafficking conspiracy, Ware served as a source of supply for his coconspirators and was found responsible for trafficking 211.02 grams of actual methamphetamine in the Carthage, Texas, area in 2016-2017. Ware supplied 25.92 grams of actual methamphetamine sold by a coconspirator to a confidential informant ("CI") on November 22, 2016. Ware also facilitated the sale of 25.3 grams of actual methamphetamine in a transaction on January 6, 2017, and the sale of 47.8 grams of actual methamphetamine in a transaction on January 12, 2017, to the CI in conjunction with another coconspirator. He was also found responsible for an additional 112 grams of actual methamphetamine that a coconspirator sold on his behalf, including 10 "packs" (70 grams), one "half" (14 grams), and one "zip" (28 grams).

As to his other charges, Ware used his girlfriend's computer while on bond to create a false Facebook account purportedly in the name of the CI, which he then used to create and send what appeared to be exculpatory and mitigating statements regarding himself. The fraudulent messages were submitted to the court's law clerk in preparation for trial, which caused the Government to dismiss the original charges against him without prejudice for further investigation. Ware also posted the CI's telephone number, the investigators' full names, and the true names of many of the codefendants in the prior case in an attempt to influence, delay, or prevent the testimony of the CI in an official proceeding. Even after conviction and sentencing, Ware has continued to deny responsibility for his actions, sought documents that the court has expressly prohibited him from possessing, and filed numerous *pro se* motions with the court while represented by counsel. In addition, Ware's criminal history includes prior convictions for assault causing serious bodily injury - family member, possession of marijuana, driving with an invalid license (3), and

displaying a fictitious license plate. Ware also has a history of daily marijuana use. Moreover, Ware has served only 21 months (approximately 12%) of his 180-month sentence of imprisonment. In view of the circumstances surrounding his offenses of conviction and criminal history, the court cannot conclude that he would not pose a danger to any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,629 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Ware's track record is similarly a poor one.

In short, Ware has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*,

2020 WL 1940570, at *4-5 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

III.    Conclusion

In accordance with the foregoing analysis, Ware's Emergency Motion for Compassionate Release (#200) is DENIED.

SIGNED at Beaumont, Texas, this 14th day of September, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE